IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JUN 1 8 1999

UNION PACIFIC RAILROAD COMPANY                         PLAINTIFF

VS.                    NO. LR-C-99-204

THE LAKIN LAW FIRM, P.C.,
CHARLES W. AMBRUSTER, III, and
BRADLEY M. LAKIN                                       DEFENDANTS

**MEMORANDUM BRIEF IN SUPPORT
OF RESPONSE TO MOTION TO DISMISS**

I.   Introduction.

     Plaintiff Union Pacific Railroad Company ("UP") filed this
action in an effort to avoid a multiplicity of future lawsuits
concerning the preemptive scope of the Railway Labor Act, ("RLA"),
45 U.S.C.§§ 151-188 (1986).  Plaintiff is a "carrier" subject to
the RLA.  Complaint,¶ 1.  Defendants, the Lakin Law Firm, Charles
W. Ambruster, III and Bradley M. Lakin, are attorneys who
regularly represent UP employees in actions against UP brought
pursuant to the Federal Employers Liability Act ("FELA"), 45 U.S.C.
§§ 51-56 (1986).  Complaint, ¶ 6.  In the course of this
representation, Defendants have engaged in a pattern and practice
of violating UP's rights under the RLA by filing lawsuits against
UP in Illinois state court.  Complaint, ¶ 9.

     Defendants file these lawsuits, in which Defendants are the
named plaintiffs, to prevent UP from investigating and disciplining
Defendants' clients in accordance with UP's disciplinary rules and
the applicable collective bargaining agreement ("CBA").  Defendants

argue that UP's investigation tortiously interferes with Defendants' relationship with their clients. The Illinois state courts have been receptive to this argument and have enjoined UP from investigating or disciplining Defendants' clients during the pendency of their FELA lawsuits. <u>See</u> Complaint, ¶¶ 10-12.

UP seeks a declaration that the RLA preempts Defendants' state court lawsuits and an injunction preventing Defendants from filing similar lawsuits in the future. Defendants move to dismiss UP's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[1] The facts alleged in UP's Complaint are identical to the facts before the district court in <u>Norfolk & Western Railway Co. v. Daniels</u>, 40 F.Supp.2d 356 (W.D. Va. 1999). In that case, the district court granted the railroad the precise relief sought by UP in the present case. In accordance with the district court's opinion in <u>Daniels</u>, <u>supra</u>, and for the reasons set forth below, Defendants' motion to dismiss should be denied.

II. <u>Railway Labor Act Preemption</u>.

Illinois state courts lack jurisdiction to enjoin UP from investigating and disciplining Defendants' clients because the RLA vests exclusive jurisdiction in an adjustment board established by

---

[1] In ruling on Defendants' motion, this Court must accept the Complaint's factual allegations as true and construe them in the light most favorable to UP. "In essence, this mandates that a complaint should not be dismissed `unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement to relief.'" <u>Midwestern Machinery, Inc. v. Northwest Airlines, Inc.</u>, 167 F.3d 439, 441 (8th Cir. 1999) quoting, <u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, 133 F.3d 649, 651 (8th Cir.1998).

the UP and the relevant unions.  See 45 U.S.C. § 184.  The RLA was enacted by Congress in 1926 and was intended "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes."  Hawaiian Airlines v. Norris, 512 U.S. 246, 253, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203, 211 (1994).  In Taggart v. Trans World Airlines, 40 F.3d 269 (8th Cir. 1994), the Eighth Circuit explained:

> The [RLA] establishes a mandatory arbitral mechanism for the prompt and orderly settlement of two types of disputes.  Disputes concerning rates of pay [and] rules of working conditions are "major" disputes.  "Major" disputes involve the formation of collective bargaining agreements or efforts to secure them.  In comparison, "minor" disputes grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.  "Minor" disputes involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.  Major disputes seek to create contractual rights, minor disputes to enforce them.

40 F.3d at 272 (internal quotations and citations omitted).  A claim is a minor dispute preempted by the RLA if it "involve[s] duties and rights created or defined by the collective-bargaining agreement."  Norris, 512 U.S. at 258.

### The Collective Bargaining Agreement

The duties and rights encompassed within a CBA include more than the express terms about which the parties actually bargained. Wheeler v. St. Louis S.W. Ry. Co., 90 F.3d 327, 330 (8th Cir. 1996).  See Fry v. Airline Pilots Ass'n, 88 F.3d 831, 836 (10th Cir. 1996)("[A] CBA is more than the sum of its parts.").  "The collective [bargaining] agreement covers the whole employment relationship."  Consolidated Rail Corp. v. Railway Labor

-3-

Executives' Ass'n, 491 U.S. 299, 313, 109 S.Ct. 2477, 105 L.Ed.2d
250 (1989)("Conrail").[2] Rules, practices and customs not expressly
incorporated into the CBA are considered implied terms of the CBA.
See Norris, 512 U.S. at 265 n.10. Therefore, "claims are minor
disputes if they depend not only on a right found in the CBAs, but
also if they implicate practices, procedures, implied authority, or
codes of conduct which are part of the working relationship." Fry,
88 F.3d at 836.   See also Brotherhood of Maintenance of Way
Employees v. Burlington Northern Railroad Co., 802 F.2d 1016, 1024
(8th Cir. 1986)(district court erred in enjoining new medical
examination policy because change in policy was minor dispute
preempted by RLA).

     This case concerns UP's rules relating to the investigation
and discipline of employees which are an implied part of the CBA of
all UP employees.   See Complaint, ¶ 8.   Those rules require UP
employees to appear and testify at accident and disciplinary
investigations irrespective of whether they have filed FELA claims
and are represented by Defendants.   See Complaint, ¶ 11.
Defendants in the past have and in the future will likely employ
the Illinois state courts to enjoin UP from requiring their clients
to appear and testify at investigation hearings being conduced by

---

[2]In Conrail, supra, the union contested Conrail's unilateral
decision to include urinalysis drug screening as a part of all
return-to-work examinations.  491 U.S. at 300.  The parties
agreed that Conrail's policy of conducting physical examinations
"[was] an implied term of their collective bargaining agreement,"
and thus, governed by the RLA.  Id. at 301.  The issue in Conrail
was whether the union's dispute was "major" or "minor."  Id. at
301.

UP in accordance with the CBA.  <u>See</u> Complaint, ¶ 13.  Accordingly,
UP seeks a declaratory judgment that the Illinois state court
actions present minor disputes preempted by the RLA and concomitant
injunctive relief.

<u>RLA Preemption Analysis</u>

In <u>State ex rel. Union Pacific Railroad Co. v. Dierker</u>, 961
S.W.2d 816 (Mo. banc 1998), <u>cert</u>. <u>denied</u> <u>Harper v. Union Pacific</u>
<u>Railroad Co.</u>, ___ U.S. ___, 119 S.Ct. 55, 142 L.Ed.2d 43 (1998),
the Missouri Supreme Court considered the issue of RLA preemption
under almost identical facts.  At issue in that case was UP's
medical leave and return to work rules.  The plaintiffs, UP
employees, sought and obtained protective orders exempting
plaintiffs from these rules during the pendency of their FELA
claims.  <u>Id</u>. 961 S.W.2d at 818.  In fact, it was the "uniform rule"
in the circuit court for the City of St. Louis in all FELA cases to
grant such protective orders.  <u>Id</u>.  UP sought a writ of prohibition
from the Missouri Supreme Court.  <u>Id</u>.  The court granted the writ
of prohibition and held that the circuit court of the City of St.
Louis lacked jurisdiction to enter the protective orders due to RLA
preemption.  <u>Id</u>. 961 S.W.2d at 824.

The Missouri Supreme Court first recognized that the CBA "may
include implied terms that can be interpreted from the parties
`practice, usage, and custom.'"  <u>Id</u>. 961 S.W.2d at 819, quoting
<u>Conrail</u>, 491 U.S. at 311.  The court then discussed the RLA's
underlying policy of "fostering uniform, certain adjudication of
disputes over the meaning of collective bargaining agreements . .

. ." Id. 961 S.W.2d at 820.  It noted that this policy "cannot be achieved unless an arbitrator, not the court, has the responsibility to interpret the labor contract in the first instance." Id.  The court continued:

> If the resolution of a dispute purportedly having a
> remedy in state law depends upon the meaning of a
> collective bargaining agreement, the application of state
> law might lead to inconsistent interpretations of the
> agreement since there could be differing laws among the
> states.  As a consequence, if resolution of a dispute
> requires the interpretation of a collective bargaining
> agreement, the RLA's mandatory arbitration provision has
> been interpreted to eliminate the possibility of
> inconsistent interpretations of the agreement by
> providing that the application of state law is pre-empted
> by the RLA and the dispute must be referred to the proper
> mandatory adjustment board.

Id.  The court concluded that the RLA preempted state court jurisdiction "because it is necessary to interpret the implied terms of the agreement as exhibited by the company medical rules and the railroad's regular practices to determine whether the railroad has a right to issue directives such as in this case or whether plaintiffs have a right to be free from them." Id. 961 S.W.2d at 822-23.

The Missouri Supreme Court's decision in Dierker is consistent with the RLA preemption analysis applied by the Eighth Circuit and district courts within the Eighth Circuit.  In Calvert v. Trans World Airlines, 959 F.2d 698 (8th Cir. 1992), Calvert brought suit against TWA[3] asserting a state law claim for intentional infliction of emotional distress arising out of Calvert's employment with TWA.

---

[3]The RLA was extended to the airline industry in 1936. See, e.g., Taggart, 40 F.3d at 272.

Calvert alleged that, after he joined other TWA pilots in a labor dispute against TWA, TWA retaliated with "a campaign of harassment and intimidation." Id. at 699. Specifically, TWA declared Calvert unfit to fly and ordered that he undergo a psychiatric examination the day before he was scheduled to be deposed as a part of the labor dispute. Id.

TWA denied any retaliatory intent and claimed that it was merely exercising its right under the CBA to ensure the health and competency of its pilots. Id. Section 16 of the CBA provided that "[a] pilot shall not be required to submit to any Company physical examinations . . . without the pilot's consent unless it is apparent that the pilot's health or physical condition is seriously impaired." Id. at 700. TWA maintained that it had a right under the CBA to require Calvert to undergo medical testing after Calvert disclosed during the labor dispute that stress had caused him to lose approximately 10 pounds and caused a 20 point increase in his systolic blood pressure. Id. Because Calvert's claim involved TWA's right to require medical testing under the CBA, TWA argued that Calvert's claim was preempted by the RLA.

The Eighth Circuit agreed with TWA and rejected Calvert's argument that the issue was TWA's motivation in ordering the testing, i.e., harassment and intimidation. Even accepting TWA's motive as an issue, the Eighth Circuit stated, "Nevertheless, section 16 of the collective bargaining agreement specifically addresses TWA's ability to require its pilots to undergo medical testing . . . ." Id. Accordingly, the Court concluded that

-7-

Calvert's claim "implicate[d] the terms of the collective bargaining agreement," and therefore, was preempted by the RLA. Id. See, e.g., Bancouri v. Union Pacific Railroad Co., 981 F.Supp. 1271 (E.D. Mo. 1997)(denying FELA plaintiff's motion for protective order based on RLA preemption); Schnelle v. Soo Line Railroad Co., 976 F.Supp. 849 (D. Minn. 1997)(same); and Stewart v. Burlington Northern Railroad Co., 173 F.R.D. 254 (D. Minn. 1995)(same).

Similarly, the Illinois state court lawsuits brought by Defendants implicate the terms of the CBA, and therefore, are preempted by the RLA. Defendants essentially seek to exempt UP employees with pending FELA lawsuits (or at least those represented by counsel in Illinois) from the CBA. The RLA's policy of "fostering uniform, certain adjudication" requires that the question of whether or not these employees are exempt from the CBA be resolved through the mandatory arbitration process established by the RLA.

This question has, in fact, been raised by employees through the RLA arbitration process. See Exhibit 1 attached. John E. Young, a UP employee, filed a grievance after he was disciplined for refusing to appear for a medical evaluation while on medical leave. Young argued that he was not subject to UP's medical rules because of his pending FELA lawsuit. The RLA adjustment board rejected Young's argument stating:

> If an employee is carried on the seniority list and has a right to exercise certain rights that flow from seniority, [UP] logically has the right to make itself aware of the status of the employee and [to] determine whether productive work exists that that employee can perform. Claimant in this instance has an obligation to

-8-

follow [UP's] directive and [to] appear as directed for
a physical and functional capacity evaluation. He cannot
hide behind his lawyer in the FELA case, nor can he
refuse to appear because he claims that his medical
condition does not allow him to work.

[UP] has a right to require Claimant to be evaluated as
long as his name is continued on the seniority list. If
Claimant wishes to deny [UP's] request, he can do so by
allowing [UP] to remove his name from that list. Absent
Claimant authorizing [UP] to remove his name, he is
required to follow its directives under pain of
discipline in the event he refuses.

See Exhibit 1 attached. Therefore, so long as Defendants' clients

remain UP employees, they are subject to UP's work rules and to

discipline for failing to comply with those rules.

III. Noerr-Pennington Doctrine.

Defendants' primary argument for dismissal rests on the Noerr-

Pennington doctrine. See Railroad Conference v. Noerr Motor

Freight, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and

United Mine Workers of America v. Pennington, 381 U.S. 657, 85

S.Ct. 1585, 14 L.Ed.2d 626 (1965). That doctrine has no

application in the present case. Discussing the Noerr-Pennington

doctrine in the labor context, Justice Brennan wrote:

While the Constitution protects a person's right to file
and to prosecute a lawsuit in state court, it does not
guarantee that state law, rather than federal law, will
provide the ground for decision. In fact, with regard to
labor disputes, federal preemption of state law is the
rule, not the exception. That preemption may be
accomplished by congressionally authorized administrative
action as well as by legislation.

Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 753, 103

S.Ct. 2161, 76 L.Ed.2d 277 (1983)(Brennan, J., concurring)(emphasis

supplied). In the present case, not only does the RLA preempt

state law, state courts lack jurisdiction to consider claims

-9-

involving interpretation of the CBA. <u>Norris</u>, 512 U.S. at 258. Thus, the RLA preempts Defendants' alleged right under the Noerr-Pennington doctrine to bring their claims in state court.

Defendants cite <u>South Dakota v. Kansas City Southern Industries, Inc.</u>, 880 F.2d 40 (8th Cir. 1989) to support their argument the Noerr-Pennington doctrine bars UP's tortious interference claim. However, the court's mention of the Noerr-Pennington doctrine in that case was part of a larger discussion of Restatement (Second) of Torts § 767. Restatement (Second) of Torts § 727 sets forth the factors for determining whether interference with a contract is "improper." <u>See</u> <u>Mason v. Wal-Mart</u>, 333 Ark. 3, 12, 969 S.W.2d 160, 164 (1998). One of those factors is "the social interests in protecting the freedom of action of the actor and the contractual interests of the other." Restatement (Second) of Torts § 767(e). The court in <u>Kansas City Southern</u> simply observed that the interest to be protected by Restatement (Second) of Torts § 767(e) is the same interest underlying the Noerr-Pennington doctrine. Even so, that is just one of seven factors to be considered in determining whether interference is "improper." <u>See</u> Restatement (Second) of Torts § 767 and <u>Mason</u>, 333 Ark. at 14, 969 S.W.2d at 165. UP's Complaint clearly states a claim for tortious interference considering all of the seven factors set Restatement (Second) of Torts § 767. Accordingly, the Noerr-Pennington doctrine provides no basis for dismissing UP's tortious interference claim under Fed. R. Civ. P. 12(b)(6).

IV.   Injunctive Relief.

Defendants next contend that UP's Complaint fails to state a claim for injunctive relief under Fed. R. Civ. P. 65.   This contention is without merit.   The equitable power of this Court to grant UP the relief it seeks is well settled:

> Although a court of equity is loath to interfere by way of injunction with judicial proceedings in another court, the power of such a court to restrain persons over whom it has acquired jurisdiction is clear and indisputable in this respect.   Injunction will issue against the institution of threatened suits as well as to restrain the prosecution of suits already pending, if circumstances justify such restraint, and if the threat of suit is more than a mere apprehension that an action will be instituted in the future.

42 Am.Jur.2d, *Injunctions*, § 201, p. 980-81 (1969).   The threat of a multiplicity of future lawsuits by Defendants justifies injunctive relief in the present case.   See First State Bank v. Chicago, R.I.&P.R. Co., 63 F.2d 585, 590 (8th Cir. 1933)("This court recognizes the general principle that the avoidance of a multiplicity of suits is a ground of equitable jurisdiction, and that equity may interfere to prevent them."); Daniels, 40 F.Supp.2d at 366, citing Lee v. Bickell, 292 U.S. 415, 421, 54 S.Ct. 727, 78 L.Ed. 1337 (1934)("[T]he multiplicity of actions necessary for redress at law being sufficient, without reference to other considerations, to uphold the remedy by injunction.").   See also Thomason v. Cooper, 254 F.2d 808 (8th Cir. 1958)(affirming district court order enjoining enforcement of state court injunction).

In Daniels, supra, the district court granted the Norfolk Southern Railroad ("NS") injunctive relief identical to that sought by UP in the present case.   That case concerned the Pratt & Tobin

-11-

law firm.  Like Defendants, Pratt & Tobin regularly represented railroad employees in FELA lawsuits and obtained injunctions against the railroad in Illinois state courts to prevent the railroad from conducting disciplinary proceedings against their clients.  Id. 40 F.Supp.2d at 363.  The district court found that Pratt & Tobin's state cause of action involved interpretation of the CBA, and therefore, was preempted by the RLA.  Id. 40 F.Supp.2d at 365.

The district court also found that equitable principles justified injunctive relief in favor of NS.  In response to Pratt & Tobin's argument that NS had an adequate remedy at law, the court stated:

> It is likely that future state court actions will be filed against NS and legal relief, even if available, could only be obtained by multiple actions. [citation omitted].  Similarly, NS's interest in preserving its disciplinary system without interference could not be adequately measured or compensated for in money damages, and thus without an injunction, NS likely will suffer irreparable harm.

Id. 40 F.Supp.2d at 366.  Accordingly, the court concluded:

> By commencing legal proceedings against NS to obtain injunctions prohibiting NS from conducting disciplinary investigations concerning alleged misconduct by NS employees who are also clients of Pratt, Pratt has interfered with and deprived NS of its rights under the applicable CBAs with the unions representing NS employees.  Such interference is likely to reoccur and cause NS irreparable harm, for which it is without an adequate remedy at law. . . .  NS is entitled to a declaratory judgment and permanent injunctive relief against Pratt as to Pratt's interference with NS's rights under the CBAs to conduct disciplinary investigations.

Id. 40 F.Supp.2d at 367.  For these reasons, Defendants motion to dismiss should be denied, and UP should be granted the same relief

-12-

awarded NS by the district court in <u>Daniels</u>. <u>See United Industrial</u>
<u>Workers of the Seafarers' International Union of North America v.</u>
<u>Board of Trustees of Galveston Wharves</u>, 400 F.2d 320, 332 (5th Cir.
1968)("[W]hen national labor policy is adversely affected by a
state proceeding threatening the jurisdiction of the federal court,
the federal court may enjoin the state court proceeding."); <u>United</u>
<u>Transportation Union v. Long Island Railroad and Metropolitan</u>
<u>Transportation Association</u>, 509 F.Supp. 1300, 1308 (E.D.N.Y.
1980)("[W]here a federal court has finally declared that a party
does not enjoy a protected right and the pending state judicial
proceeding threatens to nullify the effect of the federal court's
determination, an injunction may issue to prevent such a result."),
<u>rev'd on other grounds</u> 634 F.2d 19 (2nd Cir. 1980), <u>rev'd</u> 455 U.S.
678, 102 S.Ct. 1349, 71 L.Ed.2d 547 (1982).

V.    <u>Collateral Estoppel, Res Judicata and Full Faith and Credit</u>.

Defendants also argue that UP's Complaint is barred by the
doctrines of collateral estoppel, res judicata and full faith and
credit. This argument fails for two reasons. First, UP only seeks
prospective relief as to future lawsuits likely to be brought by
Defendants. Prior lawsuits are referenced in UP's Complaint to
evidence the past pattern and practice of Defendant, not in an
effort to relitigate those cases. UP seeks to avoid having to
raise RLA preemption as a defense in a multiplicity of future
lawsuits brought by Defendants. The doctrines of collateral
estoppel, res judicata and full faith and credit would not preclude
UP from raising RLA preemption as a defense in these future

actions, and therefore, they do not bar UP from affirmatively seeking relief based on RLA preemption in the present case. <u>See</u> <u>Bueford v. Resolution Trust Corp.</u>, 991 F.2d 481, 485 (8th Cir.1993) ("Lack of subject matter jurisdiction, unlike many other objections to the jurisdiction of a particular court, cannot be waived. It may be raised at any time by a party to an action, or by the court sua sponte."); Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

Second, the prior state court judgments are void because the Illinois state courts lacked subject matter jurisdiction. In <u>Weathers v. City of Springdale</u>, 239 Ark. 535, 390 S.W.2d 125 (1965), the Arkansas Supreme Court noted that "[i]t is well settled that where jurisdiction is lacking, a decree to that extent is void and therefore not res judicata to a subsequent action in a court of competent jurisdiction." 239 Ark. at 537, 390 S.W.2d at 127. Similarly, under Illinois law:

> A judgment or order is void where it is entered by a court or agency which lacks personal jurisdiction, subject-matter jurisdiction, or the inherent power to enter the particular judgment or where the order is procured by fraud. [citation omitted]. The void order is a complete nullity from its inception and has no legal effect. [citation omitted]. A void order may be attacked, either directly or collaterally, at any time or in any court.

<u>Siddens v. The Industrial Commission</u>, 1999 WL 236181 (Ill.App. 4 Dist. 1999). Thus, the doctrines of collateral estoppel, res

judicata and full faith and credit have no application in the
present case.

VI.   Failure to Join Necessary Parties.

Finally, Defendants argue, "To the extent Union Pacific seeks
to litigate the collective bargaining agreements it must include
the parties to the agreement - specifically, the unions with whom
Union Pacific contracted."   Defendants' Brief, p. 13.   This
argument reflects a fundamental misunderstanding of the relief
sought by UP. UP does not seek to litigate the meaning of the CBA
and does not ask this Court to express any opinion as to the
meaning of the CBA.   Like the Illinois state courts, this Court
lacks jurisdiction to interpret the CBA. By enjoining Defendants
from bringing further Illinois state court actions, UP seeks to
have the CBA interpreted by an adjustment board selected by UP and
the relevant unions as required by the RLA.   Thus, Defendants
cannot meet their burden of establishing that the labor unions are
indispensable parties under Fed. R. Civ. P. 19.   DeWit v. Firstar
Corp., 879 F.Supp. 947, 992 (The proponent of a motion to dismiss
for failure to join an indispensable party has the "burden of
producing evidence showing the nature of the interest possessed by
an absent party and that the protection of that interest will be
impaired by the absence.").

In support of this argument, Defendants cite Nix v. Spector
Freight Systems, Inc., 264 F.2d 875 (3rd Cir. 1959).   That case
arose out of the merger of Mid-State Freight System into Spector
Freight Lines.   Teamsters Local 478 had a contract with both

-15-

companies.  The plaintiffs, a group of Mid-State employees, alleged
that Local 478 and Spector conspired to breach the Mid-State
agreement with regard to seniority rights of Mid-State employees
and sought to set aside an arbitration award related to seniority.
Id. at 876.  Neither Local 478 or the Spector employees who gained
seniority rights at the plaintiffs' expense were made parties to
the litigation.   The district court dismissed the plaintiffs'
complaint for failure to join indispensable parties, and the Third
Circuit affirmed stating:

> Appellants cannot have the arbitration award set aside or
> their contract enforced as they ask unless the court
> shall deprive the union and certain union members of the
> benefit of a favorable arbitration award and impose a
> contrary interpretation of the controlling contract, in
> derogation of the seniority benefits now being enjoyed.
> [citation omitted].   Any such effect on interested
> persons makes their presence or representation essential
> to the litigation.

Id. at 877.

Unlike the plaintiffs in Nix, the relief requested by UP will
not adversely affect the rights of parties not before this Court.
If any individual employee believes that he should be exempt from
CBA during the pendency of his FELA lawsuits, he may file a
grievance and have that grievance resolved in accordance with the
process for resolution of "minor disputes" under the RLA.  If any
union wants to expressly exempt from the CBA employees who have
filed FELA lawsuits, the union can seek to create such a right
through the "major dispute" process established by the RLA.   In
either case, the proper forum is that established by the RLA, not
Illinois state courts.  Therefore, unions representing UP employees

are not indispensable parties under Fed. R. Civ. P. 19, and Defendants' motion to dismiss on this ground should be denied.

VII. <u>Conclusion</u>.

UP's Complaint states claims for relief under both federal and state law. Defendants have engaged in a pattern and practice of violating UP's rights under the RLA and of tortiously interfering with UP's contractual relationship with its employees. Moreover, Defendants will likely continue this practice in the future making injunctive relief appropriate. Accordingly, Defendants' motion to dismiss should be denied, and UP should be awarded the declaratory and injunctive relief prayed for in its Complaint.

Respectfully submitted,

WILLIAM H. SUTTON (59018)
JOHN C. FENDLEY, JR. (92182)
2000 Regions Center
400 West Capitol Avenue
Little Rock, Arkansas  72201-3493
501-376-2011

Attorneys for the Plaintiff,
Union Pacific Railroad Company

BY: _____
JOHN C. FENDLEY, JR. #92182

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been served by U.S. Mail, postage prepaid, this 18th day of June, 1999 upon:

Mr. Samuel A. Perroni
Mr. Patrick R. James
PERRONI & JAMES
801 West Third Street
Little Rock, Arkansas  72201

JOHN C. FENDLEY, JR.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# Exhibits Attached
# to Original
# Document in
# Court's Case File